**FORD O'BRIEN LANDY** LLP

> *The Court is unaware of any such motion as a "Motion for Indemnification." The Caplas have not answered the complaint and their time to do so has not run. They have filed no cross-claim. The Court has not set a schedule for discovery of the yet-unasserted cross-claim. The Caplas' application is DENIED. SO ORDERED*
>
> *P. Kevin Castel, USDJ*
> *10-18-23*

October 13, 2023

*Via ECF*
Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Schottenstein, et al. v. Capla, et al.*, 1:22-cv-10883-PKC, Pre-Motion Letter

Dear Judge Castel:

As Your Honor is aware, we represent Edward and Yolanda Capla (collectively, the "Caplas") in the above-referenced matter. We write pursuant to Your Honor's Individual Practices 3(A) to advise the Court of the Caplas' intention to file a Motion for Indemnification seeking an order directing Defendant Orthogen International GmbH ("Orthogen") to indemnify the Caplas for legal expenses incurred in defending against this lawsuit. This letter describes the anticipated factual and legal basis for that Motion and proposes a briefing schedule for it. There is currently no scheduled conference before the Court. (Individual Practices at ¶ 3(A)(vi)).

**A.   Factual Basis for Indemnification**

The Caplas demand Orthogen honor its contractual obligation to immediately indemnify the Caplas for the actual and reasonable expenses, including attorney's fees, that the Caplas have incurred and continue to incur in defending themselves against this Action filed by Douglas Schottenstein, M.D. ("Schottenstein"), and promptly begin to advance the actual and reasonable fees for the ongoing proceeding.

On October 13, 2012, Orthogen entered the Regenokine® Program License Agreement with Schottenstein and Capla, wherein Orthogen served as licensor and both Schottenstein and Capla served as licensees. The license permitted Schottenstein and Capla to use Orthogen's patented autologous blood treatment Regenokine.

On June 17, 2014, the agreement was renewed as the Standard Regenokine Program License Agreement (the "2014 License"). The 2014 License was granted for an initial period of twelve months, automatically renewing thereafter for successive periods of twelve months, unless either of the parties provided notice of non-renewal or the agreement was terminated for cause in accordance with Article 10 therein. The 2014 License represented "a limited, non-exclusive, non-transferable and non-sublicensable license" to use Regenokine in exchange for payment of enumerated license fees under Article 3 therein to Orthogen.

On July 9, 2014, the 2014 License was amended by a Side Letter agreement. The Side Letter added Yolanda Capla, Michael J. Neely, D.O., and Dr. Judith Capla as approved employees under the 2014 License. It further amended the term of the 2014 License to be continual until the

Hon. P. Kevin Castel                                                                                                                2
*Schottenstein, et al. v. Capla, et al.*

expiration of the Regenokine patents or until the Know-How was no longer protected, whichever was later, unless terminated earlier for cause pursuant to Article 10 therein. The 2014 License otherwise remained unchanged in other regards. Schottenstein and Capla engaged in the use of Regenokine under the 2014 License until May 31, 2020.

On March 24, 2020, then-Managing Director of Orthogen, Nina Breidenbach, issued a letter to Schottenstein and Capla, terminating the 2014 License on non-renewal grounds. The letter stated: "This is the notice to not renew our license agreement (dated June 1st, 2014) with you []. This means that our agreement is terminated by May 31st, 2020…"

Shortly thereafter, on June 1, 2020, Orthogen entered a separate Standard Regenokine Program License Agreement (the "2020 License") with Capla and Dr. Wasserman to use the Regenokine Program. The 2020 License is renewable for successive twelve-month periods, unless either of the parties provide notice of non-renewal or the agreement is terminated earlier for cause. The 2020 License contains the following provision:

> The LICENSOR [Orthogen International GmbH] shall indemnify and hold harmless the LICENSEES [Bradley R. Wasserman and Edward L. Capla], their employees and affiliates against any and all third party actions, suits, claims or expenses that may be brought against the LICENSEES, their employees and affiliates in the event that REGENOKINE PROGRAM PATENTS and/or KNOW-HOW infringe upon, misappropriate or *otherwise violate any third party* intellectual property rights or other *proprietary rights*, provided that the LICENSOR knew about such infringement or misappropriation and failed to inform the LICENSEES accordingly.

(2020 License, § 8.8) (emphasis added).

**Second Amended Complaint**

This Action is entirely premised on the allegation that the 2014 License was wrongfully terminated as part of a conspiracy to prevent Schottenstein from further taking part in the Regenokine program. This Action alleges that the 2020 License between Capla, Dr. Wasserman, and Orthogen, misappropriates Schottenstein's alleged proprietary rights to Regenokine under the 2014 License. (*See e.g.,* 2d. Am. Compl. ¶¶ 26, 55, 59, 92, 130, 140, 141, 143, 204).

According to the Second Amended Complaint, on both July 28, 2022, and August 3, 2022, Schottenstein communicated with Orthogen requesting the company reinstate the 2014 License on the grounds it was wrongfully terminated. (2d. Am. Compl. ¶ 112). Because the Side Letter agreement amended the term of the 2014 License, it could only be terminated until the expiration of the Regenokine patents or for cause: therefore, the March 2020 termination letter premised on non-renewal, was void *ab initio.* (*Id.* ¶ 111).

On August 3, 2022, following Schottenstein's second request, current Managing Director of Orthogen, Peter Niederau, responded and demanded Schottenstein refrain from further administering the Regenokine treatment to patients and cease all public relation actions violating

Hon. P. Kevin Castel                                                                                        3
*Schottenstein, et al. v. Capla, et al.*

Orthogen's intellectual property rights given there was no valid license agreement between Schottenstein and Orthogen. (*Id.* ¶ 113).

However, on August 8, 2022, Klaus Wehling—Orthogen's attorney and former Chief Financial Officer—admitted "the termination of the License Agreement in 2020 was invalid[,]" and there was therefore "agreement amongst all parties that the current contract had not been terminated and is therefore still valid." (*Id.* ¶ 116). Indeed, this was because the Side Letter agreement had expanded the term of the 2014 License until the expiration of the Regenokine patents and prohibited the termination of the license without cause. Correspondingly, Orthogen reinstated the 2014 License and Schottenstein's rights to use the Regenokine program.

On November 2, 2022, Mr. Wehling responded to Schottenstein's counsel, stating: "ORTHOGEN has done everything possible to meet all its obligations in September 2022…Today for ORTHOGEN it is absolutely not understandable why Dr. Schottenstein does not want to restart the Regenokine® Program to his patients in New York…To be clear: the current contract is valid as demanded from your site…" (Dkt. 4-9 at 2).

On November 7, 2022, Schottenstein, via counsel, responded in part: "Understanding that Dr. Schottenstein's License is valid and wholly active, he is entitled to receive referrals from Orthogen to the same extent that he received such referrals prior to the discontinuance of the License." (Dkt. 4-10 at 3).

That same day, Mr. Wehling responded it has never been Orthogen's practice to refer patients to any practitioner: "every patient will look at the homepages of the offering physicians on the Internet and decide who to go to." (*Id.* at 2). Three days later, Schottenstein sent the following email, stating in part:

> but we dont behave like this in the usa folks—and seriously you know im jewish right? you have to treat a jewish share-holder in your company like this? seriously? no shame at all? to give it to another german non-doctor dude capla? you guys are tooooo much!!!!!

(Dkt. 4-11 at 2).

On November 28, 2022, Ernst & Young, on behalf of Orthogen, issued a letter to Schottenstein and walked back the company's prior position, detailing Schottenstein's recent behavior and Orthogen's decision to terminate the 2014 License for a second time, this time for cause. (*See* Dkt. 4-12). This termination was twofold: namely, (1) "…there can be no doubt that after the latest false allegations and threats our clients cannot be expected to cooperate with Mr. Schottenstein in any way…"; and (2) that a public announcement made by Schottenstein on his website violated Article 7.5 of the 2014 License, requiring prior approval by Orthogen for any publication referring to its intellectual property. On these two grounds, Orthogen concluded "there can be no doubt that the 2014 Regenokine Program License Agreement has been validly terminated." (Dkt. 4-12 at 8).

Following this second termination letter, Orthogen commenced a lawsuit against Schottenstein in the Regional Court of Düsseldorf, Germany on December 12, 2022.

Hon. P. Kevin Castel                                                                                       4
*Schottenstein, et al. v. Capla, et al.*

On December 27, 2022, Schottenstein and NY Spine commenced this Action against the Caplas, Orthogen, and certain of its employees and agents. Schottenstein alleges, among other things, the Caplas and Orthogen engaged in a conspiracy to prevent Schottenstein from participating in the Regenokine program: allegedly culminating in the March 2020 termination of the 2014 License and the granting of the June 2020 License. In short, Schottenstein alleges the Caplas committed fraud, converted, misappropriated, and violated his alleged proprietary rights in the Regenokine program under the 2014 License.

**Orthogen's Obligation to Indemnify the Caplas**

The Second Amended Complaint alleges Schottenstein "possessed ***ownership rights to the Regenokine Practice*** and business that he created, including patient lists, which ***constituted his property*** over which he legally and rightfully exercised possession and control." (2d. Am. Compl. ¶ 235) (emphasis added). It alleges that the 2020 License to Dr. Wasserman and Capla by Orthogen, "fulfill[ed] the objectives of the conspiracy…" (*Id.* ¶ 73). And by virtue of the 2020 License, the Second Amended Complaint alleges the Caplas "have been unjustly enriched to the detriment of plaintiffs in taking over and converting the operational, property and revenue interests, and cash flow from the Regenokine® Program practice they continue to presently operate, and to which plaintiffs claim at least a 50% interest…" (*Id.* ¶ 143). In essence, this Action alleges the Caplas have violated Schottenstein's proprietary rights since the date that the 2020 License went into effect.

While these claims against the Caplas are without merit, Plaintiffs have had to obtain legal counsel to defend themselves against these spurious allegations. As a result, the Caplas have incurred and will continue to incur substantial legal fees to defend themselves in this Action.

The Caplas were never made aware the 2014 License was wrongfully terminated. Nor were they ever made aware that Orthogen admitted such and reinstated the 2014 License. And up until the filing of this Action, Plaintiffs were also unaware Orthogen had terminated the 2014 License for a second time. Pursuant to Section 8.8 of the 2020 License, Orthogen is obligated to indemnify and hold harmless Capla, his employees and affiliates, against any and all third-party actions, suits, claims or expenses that may be brought against him, his employees and affiliates, in the event that the Regenokine® Program patents and/or the Know-How infringe upon, misappropriate or *otherwise violate any third-party "proprietary rights."* (emphasis added).

On August 21, 2023, the Caplas issued a demand letter to Orthogen seeking indemnification on the aforementioned grounds. On September 19, 2023, German counsel for Orthogen, Stefan Krüger, responded rejecting the Caplas' demand on the basis that Schottenstein's claims lacked merit and that any request for indemnification must be brought in Düsseldorf, Germany.

**B.     Legal Basis for Indemnification**

Section 8.8 of the 2020 License obligates Orthogen to indemnify Capla against any claims or suits alleging that Capla's actions taken pursuant to the 2020 License Agreement violate a third-party's proprietary rights:

Hon. P. Kevin Castel                                                                                          5
*Schottenstein, et al. v. Capla, et al.*

> 8.8  The LICENSOR shall indemnify and hold harmless the LICENSEES, their employees and affiliates against any and all third party actions, suits, claims or expenses that may be brought against the LICENSEES, their employees and affiliates in the event that REGENOKINE PROGRAM PATENTS and/or KNOW-HOW infringe upon, misappropriate or otherwise violate any third party intellectual property rights or other proprietary rights, provided that the LICENSOR knew about such infringement or misappropriation and failed to inform the LICENSEES accordingly.

Schottenstein's claims in this Action for fraud, conversion, conspiracy, unjust enrichment and quantum meruit against the Caplas trigger Orthogen's indemnification obligations under Section 8.8. The Second Amended Complaint alleges that the 2020 License fulfilled the objectives of the alleged conspiracy between Orthogen and the Caplas. It alleges that by virtue of the 2020 License, Schottenstein's proprietary rights in Regenokine under the 2014 License were violated. To that end, Orthogen had full knowledge of the alleged misappropriation as shown by the communications, *supra*. Orthogen admitted the termination of the 2014 License was done in error and reinstated that license knowing that Capla was no longer a party to the 2014 License. Orthogen never made the Caplas aware it had done so. Nor were the Caplas ever made aware the 2014 License had been terminated for a second time.

Orthogen has refused to indemnify and hold harmless the Caplas with respect to this Action and its claims. Yet, the contractual indemnification agreement between the parties, such at issue here, is fully enforceable under both German and New York law.

Under German law, the right to contractual indemnification "not only include[s] the satisfaction of justified claims made by third parties[,]" but equally "includes the duty to defend against unfounded claims of third parties. This is because the assumption of an indemnification obligation is typically intended to protect the indemnified party from any risk of a claim by a third party." (BGH, Judgment of 15 December 2010, VIII ZR 86/09) (para. 12). In short, the party which is obligated to indemnify (*i.e.*, Orthogen) cannot defend against the indemnification claim by arguing that the third party's (i.e., Schottenstein and NY Spine) claim is unjustified, unless such was specifically agreed to by the parties in the indemnification clause. That simply is not present here. And under New York law an indemnification clause is to be strictly construed. *See e.g., Suk Joon Ryu v. Hope Bancorp, Inc.*, No. 18 CIV. 1236 (JSR), 2018 WL 1989591, at *3 (S.D.N.Y. Apr. 26, 2018).

The relevant language from the 2020 License is clear that Orthogen "shall indemnify and hold harmless" Capla and his affiliates against third-party claims that the Regenokine Program patents and/or Know-How misappropriate or violates a third-party's "proprietary rights." No matter how unjustified the Second Amended Complaint's allegations are, they are exactly what is captured by the indemnification clause, thus triggering Orthogen's obligation.

Hon. P. Kevin Castel                                                                          6
*Schottenstein, et al. v. Capla, et al.*

**C.     Proposed Briefing Schedule for Motion for Indemnification**

Pursuant to the Court's current Scheduling Order, Defendants' motions to dismiss are due by October 30, 2023, responses are due November 30, 20203, and replies are due December 19, 2023. (Dkt. 77).

With that in mind, and subject to the Court's approval, the Caplas recommend the following briefing schedule for their anticipated motion for indemnification:

- The Caplas shall file their motion on or before November 10, 2023;
- Orthogen shall file a response to the motion on or before December 11, 2023; and
- The Caplas shall file a reply in support of their motion on or before December 19, 2023.

(Individual Practices at ¶ 3(A)(ii)).

For the foregoing reasons, as well as other reasons the Caplas will brief in their anticipated motion, we respectfully request permission to file a Motion for Indemnification. We appreciate Your Honor's consideration regarding the above.

Respectfully submitted,

Matthew A. Ford
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
Facsimile: (212) 256-1047
mford@fordobrien.com

*Counsel for Defendants*
*Edward L. Capla and Yolanda Capla*

cc:     Counsel of Record via the Court's CM/ECF system