# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

charwood@maglaw.com
(212) 880-9547

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

December 22, 2023

**By ECF**
Hon. P. Kevin Castel
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

    Re:    *Schottenstein et al. v. Capla et al.*, No. 22-10883-PKC (S.D.N.Y.)

Dear Judge Castel:

    I represent defendants Orthogen International GmbH ("Orthogen"), Peter Wehling, Nina Breidenbach, and Peter Niederau (collectively, the "Orthogen Defendants") in this case, and respectfully submit this renewed pre-motion letter pursuant to Rule 3(A) of Your Honor's Individual Rules to:

- identify the dispositive defects in the Third Amended Complaint ("TAC") filed by Plaintiffs Douglas Schottenstein and his medical practice, Schottenstein Pain and Neuro, PLLC d/b/a NY Spine (collectively "Plaintiffs");

- request that, consistent with the Court's prior orders, the Court direct Plaintiffs to show cause why — in light of the TAC's dispositive defects, as well as Plaintiffs' demonstrated inability to cure the defects over the course of their prior pleadings — the claims against the Orthogen Defendants should not be dismissed with prejudice; or alternatively

- permit the Orthogen Defendants to file a motion to dismiss the TAC without granting Plaintiffs further opportunity to amend.

    Plaintiffs' approach to this case has been to file a defective complaint, wait for the Orthogen Defendants and the Caplas to file pre-motion letters identifying the deficiencies, state that they are going to amend the complaint to address the deficiencies, file an amended complaint that fails to cure the deficiencies, and then repeat the process. Plaintiffs' approach has resulted in a needless and unfair expenditure of resources. Plaintiffs have been given more than

Morvillo Abramowitz Grand Iason & Anello P.C.

ample opportunity to try to plead actionable claims, and the Orthogen Defendants respectfully submit that whether this case continues should be evaluated based on the TAC.

## I. Because the TAC Was Filed Without Leave, It Is Procedurally Defective

Contrary to this Court's prior orders, Plaintiffs filed the TAC without moving for leave, and the TAC thus is procedurally defective and a nullity. *See Curtis v. Rockland Cnty.*, 2022 WL 16540705, at *1 n.3 (S.D.N.Y. Oct. 28, 2022) (striking an unauthorized amended complaint); *Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 64 (2d Cir. 2018) (affirming striking of an unauthorized amended complaint); *Rose v. City of Waterbury*, 2013 WL 3967649, at *2 (D. Conn. July 31, 2013) (amended complaint filed without leave had no "legal force or effect").

After Plaintiffs filed their Second Amended Complaint, both the Orthogen Defendants and the Caplas filed pre-motion letters, Dkts. 71, 75, after which the Court issued an order on September 14, 2023, setting a schedule for motions to dismiss, Dkt. 77. On the eve of the deadline for the motions to dismiss, Plaintiffs filed a letter on October 24, 2023, seeking to dismiss one of their claims and stating that they "intend to move to further amend the complaint herein, as provided in the Court's order of September 14, 2023 (Docket entry 77)[,] after defendants serve their Fed. R. Civ. P. 12(b)(6) motion(s)." Dkt. 84. Plaintiffs did not, however, (i) identify what amendments they planned to make or (ii) purport to explain how the amendments could cure the dispositive defects that through their prior pre-motion letter, the Orthogen Defendants had demonstrated existed with Plaintiffs' Second Amended Complaint.

In response, on October 27, 2023, the Court issued a revised scheduling order that (i) "grant[ed] leave to plaintiffs to *move to amend* the Second Amended Complaint (ECF 67) provided that they file the motion by November 17, 2023," (ii) stated that "any *motion to amend* will be deemed untimely unless filed by that date," and (iii) set a briefing schedule for Defendants to "respond to the *motion to amend*." Dkt. 87 (emphasis added). In a later letter to the Court dated November 13, 2023, Plaintiffs sought various forms of relief, including a court conference, and requested that "the Court extend the time for plaintiffs to *move to amend* the complaint until after the conference sought herein." Dkt 91 (emphasis added). That same day, the Court endorsed Plaintiff's November 13, 2023 letter as follows: "Time for plaintiff to amend extended to December 1, 2023 application (ECF 90) otherwise DENIED. SO ORDERED." *Id.*

Because Plaintiffs filed the TAC without obtaining leave, it is a nullity and subject to a Rule 12(f) motion to strike. *See, e.g.*, *Curtis*, 2022 WL 16540705, at *1 n.3. Plaintiffs' response — that the Court's November 13 order somehow absolved them from needing to obtain leave, *see* Dkt. 95 — is meritless. Instead of striking the TAC, however (which would only further prolong this litigation), the Orthogen Defendants respectfully request that the Court require Plaintiffs to stand on the TAC, and order Plaintiffs to show cause why it should not be dismissed or grant Defendants leave to move to dismiss it.

## II. The TAC Appropriately Is Dismissed as Against the Orthogen Defendants

The TAC removed Plaintiffs' prior declaratory judgment claim involving the FDA

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

(which Plaintiffs included in their initial Complaint and continued to assert in their Amended and Second Amended Complaints, even after the Orthogen Defendants had identified its incurable defects, *see* Dkt. 62 at 4-6; Dkt. 71 at 5-7), but fails to cure the dispositive pleading defects in Plaintiffs' remaining claims against the Orthogen Defendants.

Plaintiffs' claims arise out of a 2014 license agreement (the "License Agreement") between Orthogen (a German biotech company located in Dusseldorf, Germany) as licensor and Dr. Schottenstein and Mr. Capla as licensees. Pursuant to the License Agreement, Dr. Schottenstein and Mr. Capla were permitted to treat patients with Orthogen's patented Regenokine Program in exchange for their agreement to make certain, specified royalty payments to Orthogen. The License Agreement expressly provides that German law governs any dispute between the parties, and it contains an exclusive German forum selection clause, which mandates that "[a]ny dispute arising from or in connection with this Agreement shall be decided exclusively by the competent Courts of Dusseldorf, Germany." Dkt. 4-2, § 13.2. The clause goes on to repeat the exclusivity of jurisdiction with the Courts of Dusseldorf "for the avoidance of doubt," and it specifies that the clause applies not only to actions brought by Dr. Schottenstein or Mr. Capla against Orthogen itself, but also "against . . . any . . . representative of Orthogen." *Id.*

The TAC asserts breach of contract and various other claims against the Orthogen Defendants based on the same underlying assertion: that Orthogen supposedly lacked justification to terminate the License Agreement as of May 31, 2020. TAC ¶ 56; *see, e.g.*, *id.* ¶¶ 39-41, 46, 103, 116. Notice of the termination was provided by letter dated March 24, 2020. *Id.* ¶¶ 46, 56, 83, 116. The claims should be dismissed for at least three independent reasons:

*First*, New York is not the proper forum for Plaintiffs' claims, because the claims all arise from the License Agreement, which contains an exclusive German forum selection clause, and the claims thus should be dismissed under Rule 12(b)(3). Consistent with the forum selection clause, shortly before Plaintiffs filed this case on December 27, 2022, Orthogen filed a civil action against Dr. Schottenstein in Germany on December 21, 2022, in which Orthogen seeks the inverse of what Plaintiffs seek here: a declaration that Orthogen was justified in terminating the License Agreement in 2020. Plaintiffs acknowledge that, by letter dated November 28, 2022, Orthogen notified them of its intent to file the referenced civil action in Germany. TAC ¶ 269. The dispute underlying Plaintiffs' claims thus can (and should) be decided in the context of the pending German proceeding.

*Second*, Plaintiffs' claims also should be dismissed as against all Orthogen Defendants under Rule 12(b)(6) because Plaintiffs have not pleaded facts sufficient to sustain any of their claims. *Third*, the TAC should be dismissed as to the individual Orthogen Defendants under Rule 12(b)(2) because the TAC fails to allege that they had sufficient contacts with New York to support the exercise of personal jurisdiction over them.

### A. Plaintiffs' Claims Against the Orthogen Defendants Should Be Dismissed Based on the License Agreement's German Forum Selection Clause

The License Agreement's exclusive German forum selection clause requires dismissal of

all Plaintiffs' claims against the Orthogen Defendants. A forum selection clause presumptively is enforceable when, as here, (i) the clause was reasonably communicated to the opposing party, (ii) the clause is mandatory, and (iii) the opposing party's claims are subject to the clause. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). When those requirements are met, the clause will be enforced unless the opposing party "make[s] a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84.

Here, the German forum selection clause meets the above requirements because it (i) is contained in an agreement to which Dr. Schottenstein was a party (and thus reasonably was communicated to Plaintiffs); (ii) broadly states that the Courts of Dusseldorf have "exclusive[]" jurisdiction over "[a]ny dispute arising from or in connection with this Agreement" (and thus is mandatory), *see* Dkt. 4-2, § 13.2; *New York Marine & Gen. Ins. Co. v. M/V Admiralengracht*, 1999 WL 253628, at *2 (S.D.N.Y. Apr. 28, 1999) (upholding as mandatory forum selection clause with comparable language); and (iii) covers both Plaintiffs' breach of contract and other claims, because they all arise out of the License Agreement and involve the same operative facts, *see* TAC ¶¶ 169-208, 219-79; *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (non-contract claims are encompassed within a forum selection clause when, as here, they "ultimately depend on the existence of a contractual relationship between the parties" or "involve the same operative facts as a parallel claim for breach of contract") (internal quotations and citations omitted).

Plaintiffs cannot avoid enforcement of the forum selection clause because, under the circumstances here, enforcement would not be unreasonable or unjust. The unreasonable/unjust exception "is construed narrowly" and applies only in "limited circumstances" that are not present here, such as when "due to the grave inconvenience or unfairness of the selected forum," enforcement would "deprive [the opposing party] of his day in court." *Koninklijke Philips Elecs. V. Digital Works, Inc.*, 358 F. Supp. 2d 328, 332 (S.D.N.Y. 2005) (internal quotations and citations omitted). Plaintiffs have not identified any "grave inconvenience or unfairness" that would result from enforcement of the forum selection clause — which is consistent with the fact that German forum selection clauses routinely are upheld. *See, e.g.*, *K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition*, 36 F. Supp. 2d 200, 204 (S.D.N.Y. 1999); *Jockey Int'l, Inc. v. M/V Leverkusen Express*, 217 F. Supp. 2d 447, 457 (S.D.N.Y. 2002).

That litigation in Germany may be undesirable or pose logistical difficulties to Plaintiffs is insufficient to defeat the forum selection clause, particularly because the clause was negotiated by sophisticated counterparties in an arms-length transaction (indeed, according to the TAC, Dr. Schottenstein is a double-board certified physician in neurology and pain management who is "in a rare group of elite medical professionals"). TAC ¶ 20. *See Weingrad v. Telepathy, Inc.*, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) (Second Circuit "gives substantial deference to [forum clauses], particularly where the choice of forum was made in an arms length negotiation by experienced and sophisticated businessmen") (internal quotations and citations omitted).

In opposing enforcement, Plaintiffs raise two meritless arguments: that they will be unable to pursue their claims in Germany because (i) the forum selection clause bars their

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

affirmative claims, and (ii) their claims are "outside the scope of the License Agreement." *E.g.*, TAC ¶¶ 4-8. But the forum selection clause does not bar any claim, and instead, broadly authorizes (and requires) Dr. Schottenstein to bring in Germany "[a]ny dispute from or in connection with this Agreement," and "[f]or the avoidance of doubt," the clause specifies that such disputes include "any and all actions by any of the Licensees against any employee of the Licensor." Dkt. 4-2 at § 13. Moreover, under the case law cited above, Plaintiffs' claims all fall within the scope of the License Agreement because they arise out of Dr. Schottenstein's status as a former Regenokine Program licensee.

Moreover, litigating in Germany would not be unfair to Dr. Schottenstein for a variety of reasons, including that prior to the 2014 License Agreement at issue, he executed two prior license agreements with Orthogen to administer the Regenokine Program, *see* TAC ¶¶ 33-34, and each contained an exclusive, mandatory German forum selection clause. Even if true, Dr. Schottenstein's assertion that he did not consult counsel in agreeing to the forum selection clause, TAC ¶ 6, is irrelevant. *See Martin v. Creative Mgmt. Grp., Inc.*, 2010 WL 2629580, at *2 (S.D.N.Y. June 29, 2010) (forum selection clauses are enforceable whether or not plaintiff was "represented by an attorney in the negotiation or drafting of the Agreement") (internal quotations and citations omitted).

In Plaintiffs' prior pleadings in this case, they alleged that (i) Dr. Schottenstein and Mr. Capla each received "nearly $2 million per year" for administering the Regenokine Program (Plaintiffs included that allegation in their First and Second Amended Complaints, after having alleged the figure was "$6 million per year" in their initial Complaint), Dkt. 1 ¶¶ 51, 76; Dkt. 24 ¶¶ 63, 80; Dkt. 67 ¶ 83; and (ii) Dr. Schottenstein administered the Regenokine Program to "3,500 patients," Dkt. 1 ¶¶ 51, 76; Dkt. 24 ¶ 63; Dkt. 67 ¶ 83 (they included that allegation in all three of their prior verified complaints). As Orthogen has explained previously, if either allegation is true, that would indicate that Dr. Schottenstein and Mr. Capla failed to pay Orthogen millions of dollars in royalties to which Orthogen was due under their Regenokine Program license agreements. *See* Dkt. 25.

Those allegations are the basis for separate actions that Orthogen has filed under 28 U.S.C. § 1782 seeking discovery from Plaintiffs and the Caplas in anticipation of filing a civil action against them in Germany (consistent with the German forum selection clause) based on their apparent historical underpayment of royalties to Orthogen. Notwithstanding Plaintiffs' suggestion to the contrary, *cf.* TAC ¶¶ 7, 275, that Orthogen is complying with the requirements of the parties' German forum selection clause — and availing itself of its right under § 1782 to seek discovery from Plaintiffs and the Caplas in anticipation of pursuing claims against Dr. Schottenstein and Mr. Capla in Germany — does not somehow render the forum selection clause unenforceable in connection with Plaintiffs' distinct claims in this action.[1]

---

[1] After having included the "nearly $2 million per year" and "3,500 patients" allegations in their prior verified pleadings, Plaintiffs removed them from the TAC (and currently are using their removal as a basis to try to argue that Orthogen is not entitled to discovery about them in the Section 1782 proceeding against the Caplas). Notably, in removing the allegations from the TAC, Plaintiffs did not replace them with different figures or claim they were incorrect. In recent filings in the Section 1782 proceeding that

5

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Accordingly, Plaintiffs' claims against the Orthogen Defendants should be dismissed in favor of the pending German proceeding — which, as noted above, addresses the same issue underlying the claims here: whether Orthogen was justified in terminating the License Agreement in 2020. Given the enforceable German forum selection clause (and the parties' related agreement that German law governs the parties' dispute), no basis exists for Plaintiffs' request that this Court issue an order precluding Orthogen from adjudicating its dispute with Dr. Schottenstein in the pending German proceeding. *See* TAC ¶¶ 265-79.

### B. The TAC Fails to State a Viable Claim Against the Orthogen Defendants

Plaintiffs' claims against all the Orthogen Defendants also should be dismissed for failure to state a claim under Rule 12(b)(6).[2]

**Breach of Contract.** The breach of contract claim fails because (i) it is premised on Orthogen's purported lack of a basis to terminate the License Agreement for "cause" in March 2020 (with an effective date of May 31, 2020), *e.g.*, TAC ¶¶ 56, 83, 103, and (ii) even if a "cause" basis was required, indisputable facts exist — that properly are before the Court on a motion to dismiss — to justify a "cause" termination in March 2020.

The License Agreement provides that Orthogen shall have "good cause for an immediate termination of the Agreement . . . should any of the Licensees be sentenced for medical malpractice or violation of ethical professional rules." Dkt. 4-2 at 19. Medical malpractice is exclusively a civil cause of action, *see, e.g.*, *Sweeney v. Presbyterian/Columbia Presbyterian Med. Ctr.*, 763 F. Supp. 50, 52 (S.D.N.Y. 1991); NY CPLR § 214-a (providing the statute of limitations for the civil claim of "medical, dental or podiatric malpractice"), and ethical professional rules are enforced by civil agencies and punished through civil remedies, *see, e.g.*, *Capote v. De Buono*, 241 A.D.2d 570, 571 (3d Dep't 1997). Moreover, the surrounding provisions of the License Agreement provide grounds for a "cause" termination based on other civil or administrative events, such as Dr. Schottenstein "los[ing his] medical board license." *See* Dkt. 4-2 § 13.2(i)-(iii). Accordingly, the "cause" termination language properly is read as encompassing, among other things, (i) the entry of a civil judgment against Dr. Schottenstein for medical malpractice and (ii) a finding by an agency responsible for enforcing ethical professional rules that Dr. Schottenstein violated such a rule.

Prior to the termination of the License Agreement, (i) Dr. Schottenstein had a medical

---

Orthogen is pursuing against the Caplas in Florida, however, Plaintiffs' counsel asserted that the figures are incorrect — which if true, would mean that after Orthogen repeatedly put them on notice of the allegations' significance, *see, e.g.*, Dkt. 25, they repeatedly included the supposedly incorrect allegations in Plaintiffs' prior verified pleadings. Orthogen intends to explore that (implausible and if true, exceedingly problematic) assertion, as well as the allegations' accuracy, in the context of the Section 1782 proceedings.

[2] Pursuant to the License Agreement, the claims should be adjudicated under German law. *See supra*. As demonstrated below, however, even if U.S. law applied, the claims would still fail.

6

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

malpractice judgment entered against him for $2.1 million (on January 7, 2020), Ex. A (the referenced judgment), and (ii) on behalf of his medical practice, NY Spine, Dr. Schottenstein entered into a settlement agreement with the U.S. Department of Health & Human Services ("HHS") to resolve a finding by HHS that NY Spine had violated a HIPPA rule (*i.e.*, an ethical professional rule) by "fail[ing] to provide [a patient] access to protected health information," Ex. B (the referenced settlement agreement). By Dr. Schottenstein's own admission, he is "the sole principal in . . . NY Spine." Dkt. 4-1 ¶ 1.

Either of the above facts — the entry of a medical malpractice judgment against Dr. Schottenstein or the finding by HHS that NY Spine had violated an ethical professional rule (both of which properly are before the Court on a motion to dismiss[3]) — provided Orthogen with a "cause" basis to terminate the License Agreement in March 2020. Accordingly, even if Orthogen needed a "cause" basis to terminate, it had one and Plaintiffs' breach of contract claim fails.

That Orthogen did not learn of the above grounds for a "cause" termination until after it had notified Dr. Schottenstein of the License Agreement's termination is immaterial, because (i) when a party "would have terminated [an individual] for cause had [the individual's] misconduct been known from the time it began," the grounds for the cause termination can be applied retroactively, *see, e.g.*, *Kulick v. Gamma Real Est. LLC*, 2022 WL 4467341, at *9-10 (S.D.N.Y. Sept. 23, 2022) (holding that it was proper for a counter-party to premise a cause termination on "concealed misconduct" and that the "belated[] discover[y of] the misconduct," could be used as a basis to "retroactively assign cause to the wrongdoer's termination"), and (ii) Orthogen's letter to Dr. Schottenstein dated November 28, 2022 (which is incorporated by reference in the TAC, *see* TAC ¶ 268), confirms that Orthogen "would have terminated [the License Agreement] for cause had [Dr. Schottenstein's medical malpractice judgment and his practice's HIPPA violation finding] been known from the time [they] began," *id.* at *10; *see* Dkt. 4-12 at 5 (November 28, 2022 letter). *See also Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 342 n.49 (S.D.N.Y. 2012) ("When a party terminates a contract with an express 'for cause' termination provision, evidence discovered after the alleged breach can be used . . . to justify [the] termination.").

**Remaining Claims.** Plaintiffs' remaining claims also fail because they all arise from the same facts (and seek the same damages) as the breach of contract claim, and thus cannot be pursued in addition to (or in lieu of) the breach of contract claim. *See, e.g.*, TAC ¶¶ 169-193 (tortious interference) *id.* ¶¶ 194-201 (fraud); *id.* ¶¶ 202-208 (civil conspiracy); *id.* ¶¶ 239-251 (unjust enrichment and quantum meruit); *id.* ¶¶ 252-264 (accounting). Under settled law, when "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *E.g.*, *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

---

[3] The facts are reflected in a public court filing and public settlement agreement, and thus are matters of which the Court may take judicial notice. *See Jasper v. Sony Music Entm't, Inc.*, 378 F.Supp.2d 334, 338-39 (S.D.N.Y. 2005); *In re Premier Operations*, 294 B.R. 213, 216 n.4 (S.D.N.Y. 2003).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

In addition to being duplicative of the contract claim, the remaining claims also fail because the TAC does not plead facts sufficient to establish the elements of the claims and/or the claims are not cognizable for other reasons. For example:

- the tortious interference claim fails because Plaintiffs have not alleged that the Orthogen Defendants interfered with a contract between Plaintiffs and *a third party*, *see Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993);

- the fraud claim fails because (i) Plaintiffs have not alleged that the supposed false statement (*i.e.*, that "the non-renewal [of the License Agreement] was based on a temporary internal policy to limit Regenokine practitioners to Germany," TAC ¶ 46) was knowingly false when made, *see Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 622 (S.D.N.Y. 2011), and (ii) Plaintiffs cannot establish that they justifiably relied on the alleged statement to their detriment when the premise of their claim is that the reasoning given for the non-renewal conflicted with the express terms of the License Agreement, *see Rapaport v. Strategic Fin. Sols., LLC*, N.Y.S.3d 508, 509 (1st Dep't 2021).

- the accounting and constructive trust claims fail because (i) such claims require the existence of a fiduciary relationship between the parties, and (ii) an arms-length contractual relationship (as existed here between Orthogen and Dr. Schottenstein), does not give rise to such a relationship, *see Rodgers v. Roulette Recs., Inc.*, 677 F. Supp. 731, 738 (S.D.N.Y. 1988);

- the civil conspiracy claim fails because (i) no independent cause of action exists for civil conspiracy and (ii) Plaintiffs have failed to allege a viable tort to which this claim could attach, *see Valentini v. Grp. Health Inc.*, 2021 WL 6113991, at *7 (S.D.N.Y. Dec. 27, 2021); and

- the indemnification claim fails because Plaintiffs do not allege facts sufficient to establish that Orthogen committed a wrong for which Plaintiffs are being held financially responsible, *see Lamela v. Verticon, Ltd.*, 185 A.D.3d 1319, 1323 (3d Dep't 2020).

**C. Plaintiffs Have Failed to Allege Facts Sufficient to Establish Personal Jurisdiction Over the Individual Orthogen Defendants**

Plaintiffs' claims should be dismissed against the individual Orthogen Defendants for the additional reason that the TAC fails to allege that any of them had sufficient contacts with New York to support the exercise of personal jurisdiction over them. As an initial matter, general jurisdiction does not exist over any of the individual Defendants because the TAC acknowledges that they each reside in Germany, *see* TAC ¶ 29, and it lacks allegations to demonstrate that this is the "exceptional case where 'an individual's contacts with a forum [are] so extensive as to

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

support general jurisdiction notwithstanding domicile elsewhere." *IMAX Corp. v. The Essel Grp.*, 154 A.D.3d 464, 465-66 (1st Dep't 2017) (citation omitted).

As to specific jurisdiction, Plaintiffs fail to allege facts sufficient to make the two required showings for any individual Defendant: that (i) the Defendant engaged in "purposeful" activities in New York and (ii) "a substantial relationship" exists between such purposeful activities and the claims Plaintiffs have asserted. *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). With respect to Defendant Niederau, Plaintiffs allege only that he sent Dr. Schottenstein a letter in August 2022 (years after the termination on which Plaintiffs' claims are based) stating that Dr. Schottenstein "had no Regenokine rights and is required to cease using the Regenokine name for any purpose," TAC ¶ 46(vi); *see* Dkt. 4-5; with respect to Defendant Breidenbach, Plaintiffs allege in their only relevant, well-pleaded contact that she signed and sent Dr. Schottenstein a notice letter in March 2020 informing him that the License Agreement was being terminated as of May 2020, *see e.g.*, *id.* ¶ 69; Dkt. 4-4; and with respect to Defendant Wehling, Plaintiffs allege in their only relevant, well-pleaded contact that sometime after notice of the termination had been conveyed (Plaintiffs do not specify when), he subsequently provided Dr. Schottenstein with an (allegedly false) reason for the termination, *see, e.g.*, *id.* ¶ 122. Plaintiffs' claims, however, arise out of a decision made by an unidentified person or persons at Orthogen to terminate (allegedly) without the requisite "cause," not Defendant Breidenbach's letter informing Dr. Schottenstein of the termination, Defendant Wehling's after-the-fact reason given for the termination, or Defendant Niederau's years-later assertion that the termination remained valid. Accordingly, the TAC does not allege the requisite "articulable nexus or substantial relationship" between the isolated alleged acts to which Plaintiffs point and their claims to support personal jurisdiction over any of the individual Orthogen Defendants.

\*   \*   \*

Accordingly, for the reasons stated herein, the claims against the Orthogen Defendants in Plaintiffs' TAC are unsustainable and the Orthogen Defendants respectfully request that the Court either order Plaintiffs to show cause why the TAC should not be dismissed with prejudice or grant the Orthogen Defendants leave to move to dismiss it with prejudice.

Respectfully submitted,

/s/ Christopher B. Harwood
Christopher B. Harwood

cc: all parties (by ECF)