UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOUGLAS SCHOTTENSTEIN, MD and
SCHOTTENSTEIN PAIN AND NEURO, PLLC
d/b/a NY SPINE,

                    Plaintiffs,              22-cv-10883 (PKC)

     -against-                         OPINION AND ORDER

EDWARD L. CAPLA, YOLANDA CAPLA and
"JOHN DOE, JANE DOE & ABC CORP. 1-10,"

                    Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Douglas Schottenstein, MD and Schottenstein Pain and Neuro, PLLC, doing business as NY Spine ("NY Spine"), bring claims against Edward and Yolanda Capla related to the revocation of plaintiffs' license to administer a blood-treatment program called Regenokine and the fallout from the Caplas' departure from NY Spine. The use of Regenokine is licensed by Orthogen International GmbH ("Orthogen"), a former defendant in this action. As described in the 279-paragraph Third Amended Complaint (the "Complaint"), Schottenstein's license to administer Regenokine was canceled by Orthogen in 2020, around the same time that the Caplas departed NY Spine and went into business with non-party Bradley Wasserman.

        According to the Complaint, Edward and Yolanda Capla committed acts of malfeasance that preceded the cancellation of plaintiffs' Regenokine license and continued after they started a separate practice. Plaintiffs' claims against the Caplas center heavily on a flattering text message from Yolanda Capla to Schottenstein that praised him as a colleague and a leader. The Complaint alleges that Yolanda's text message fraudulently induced Schottenstein into taking no further action directed to the cancellation of his Regenokine license.

Edward and Yolanda Capla move to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P. For the reasons that will be explained, the motion is granted as to plaintiffs' claims of fraud, unjust enrichment/quantum meruit, and the claim for an accounting and constructive trust. The Complaint includes facts that plausibly allege conversion and a civil conspiracy to commit conversion arising from the Caplas' alleged possession of patient records and financial documents taken from the NY Spine offices. The motion to dismiss will therefore be granted in part and denied in part.

BACKGROUND.

Regenokine is an "autologous treatment and drug regimen . . . pursuant to which patients with specified injuries or conditions may be treated with the objective of reducing inflammation and promoting healing on an accelerated basis." (Compl't ¶ 24.) Orthogen is a German corporation that licenses Regenokine. (Compl't ¶ 24.)

Schottenstein is a physician who specializes in neurology and pain management, and operates his practice through NY Spine. (Compl't ¶¶ 20, 22.) Orthogen first licensed Regenokine to Schottenstein in October 2012. (Compl't ¶ 37.) In 2014, Orthogen granted a license that allowed Schottenstein to administer Regenokine at NY Spine offices. (Compl't ¶ 39.) As summarized in the Complaint, a related "Side Letter Agreement" provided that the 2014 license would be "perennial, requiring no further renewals, running until at least 2030 . . . ." (Compl't ¶ 40.) That same agreement provided that the license could only be terminated by Orthogen on a for-cause basis. (Compl't ¶ 41.) According to the Complaint, Schottenstein "received all of his Regenokine patients from referrals by Orthogen." (Compl't ¶ 139.)

Along with Schottenstein, the 2014 license identified defendant Edward Capla as a second licensee, and authorized both Schottenstein and Capla to administer Regenokine at NY

Spine locations. (Compl't ¶ 39.) Schottenstein and Edward Capla worked together from 2012 to 2020. According to the Complaint, Schottenstein first obtained his license to administer Regenokine after Orthogen learned that Edward Capla was not licensed to practice medicine, at which point, it entered into a licensing agreement that designated Schottenstein as "Licensee #1" and Capla as "Licensee #2." (Compl't ¶ 37.) According to the Complaint, this license "evidenced an agreement" between Schottenstein and Edward Capla to administer Regenokine out of NY Spine. (Compl't ¶ 38.) The Complaint states that Orthogen licensed Regenokine to "Schottenstein as the treating physician and Capla as the administrator engaged in the Regenokine practice . . . ." (Compl't ¶ 41.) Schottenstein administered Regenokine to patients, while Edward Capla "focused on reporting requirements and calculation of royalty payments." (Compl't ¶ 78.) The Complaint often references a fiduciary relationship between Schottenstein and defendants Edward and Yolanda Capla. (See, e.g., Compl't ¶¶ 11, 19, 34, 51, 159-60, 257.) It does not assert a cause of action for breach of fiduciary duty.[1]

        The Complaint asserts that Edward and Yolanda Capla conspired with Orthogen and its "operatives" to exclude Schottenstein from the Orthogen license. (Compl't ¶¶ 42-100.) The gist of these allegations is that, "motivated by greed," the Caplas conspired to seek a better financial arrangement by leaving NY Spine and starting a new Regenokine-focused business with Edward Capla's brother-in-law, non-party Bradley Wasserman. (See id.) According to the Complaint, Wasserman "had virtually no experience" in the relevant field. (Compl't ¶ 146.)

        Orthogen terminated its license to plaintiffs on March 24, 2020, allegedly without cause. (Compl't ¶¶ 56, 69, 116, 119.) Plaintiffs' claims against the Caplas rely heavily on the contents of a text message that Yolanda Capla sent to Schottenstein shortly after he received the

---

[1] It is not apparent from the Complaint whether Capla was an employee of NY Spine or whether he had some other type of status, such as a partner, officer or partial owner.

notice of termination from Orthogen. (Compl't ¶ 120.) As described in the Complaint, Yolanda Capla "handle[d] laboratory work responsibilities" at NY Spine (Compl't ¶ 79), and her text message to Schottenstein expressed fulsome praise for his leadership and abilities. It stated as follows:

> We wanted to express our deep gratitude and appreciation to you for all you have done for us and Regenokine. What we have accomplished as a team is remarkable and without you it would never have happened. You're an amazing person to work with and your tireless effort and care has made our jobs so much easier and more enjoyable. Your time, support, and cooperation we value a lot. Your exemplary work approach is unsurpassable. Much of the success of our team is because we all had the same mentality – hard work leads to success. Thank you from the bottom of our hearts for being a great colleague and never letting us settle for anything less than best. We appreciate your offer but we decided to move forward on a different path. Wishing you only the best forever and lots of continued success in your practice. I would like to come on Friday evening when you are done with patients to pick up our belongings. Let me know if this works.

(Compl't ¶ 120.) Plaintiffs assert that the text message fraudulently misstated and omitted the Caplas' motivations in leaving NY Spine in order to start their own Regenokine business and also induced Schottenstein to delay taking action on the license cancellation, as well as providing a false pretext for Yolanda Capla to enter the NY Spine offices in order to retrieve patient and financial records, which forms the basis of plaintiffs' conversion claim. (Compl't ¶¶ 121, 48.)

According to the Complaint, Edward Capla "fraudulently advance[d] his own interests" while "posing" in his "normal and usual activities," "surreptitiously" removed documents from NY Spine, and wrongfully entered into business with Wasserman. (Compl't ¶ 48; see also Compl't ¶ 161 (asserting that the Caplas "deliberately shielded their activities" from plaintiffs).) The Complaint contains a cryptic allegation made upon information and belief that Orthogen's termination of the license to Schottenstein was motivated by a goal of avoiding FDA

regulation, noting that Schottenstein had "pressed the issue" of whether Regenokine should be subject to regulation.  (Compl't ¶ 43.)

After the Caplas left NY Spine, Schottenstein unsuccessfully attempted to obtain a renewed license agreement from Orthogen in 2022.  (Compl't ¶ 131-41.)  Orthogen told Schottenstein that the license was canceled due to "irregularities in the reporting and royalty payment calculations" beginning in 2017.  (Compl't ¶¶ 142-43.)  Schottenstein states that he had not previously been informed of the irregularities, and that Edward Capla had been responsible for reporting and royalties.  (Compl't ¶¶ 144-45.)  Schottenstein describes Edward Capla as "the known likely wrongdoer in the event that alleged misreporting and under-payments of royalties were in fact true."  (Compl't ¶ 146.)

Much of the Complaint is directed to claims against Orthogen and its employees, and plaintiffs voluntarily dismissed all claims against them while this motion was sub judice.  (ECF 129.)  Against Edward and Yolanda Capla, the Complaint brings claims under New York law for fraud, conversion, civil conspiracy with Orthogen, and unjust enrichment and quantum meruit.  (Compl't ¶¶ 194-218, 239-51.)  It also seeks an accounting and an order creating a constructive trust.  (Compl't ¶¶ 252-64.)  Subject matter jurisdiction is premised on diversity of citizenship between the New York plaintiffs and the Florida defendants and satisfaction of the amount-in-controversy requirement.  (Compl't ¶ 1.)

MOTION TO DISMISS STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or

conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678.  Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"Where the claims are premised on allegations of fraud, the allegations must satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure."  In re IBM Arbitration Agreement Litig., 76 F.4th 74, 87 (2d Cir. 2023) (quotation marks omitted).  "[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Id. (quotation marks omitted).

DISCUSSION.

       I.       The Complaint Does Not Allege Fraud with Particularity.

The fraud claim asserts that the Caplas knowingly made false statements to Schottenstein, which he then relied upon "in managing his personal and business affairs," resulting in damages.  (Compl't ¶¶ 194-200.)

"The elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the

misrepresentation or material omission, and injury." Pasternack v. Laboratory Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (quotation marks and brackets omitted).

The Complaint does not allege a material representation of fact or a material omission that led to justifiable reliance and damages. The only statement attributed to either Edward or Yolanda Capla is Yolanda's above-quoted text message to Schottenstein that was sent "[s]hortly after" March 24, 2020, which conveyed "our deep gratitude and appreciation for all you have done for us and Regenokine," among other things  (Compl't ¶ 120.) The Complaint asserts that the text message was "knowingly false and intended to induce" Schottenstein not to challenge the termination of his Regenokine license and to establish "a false pretext" for Yolanda to visit the NY Spine facilities. (Compl't ¶ 121.) In his opposition memo, Schottenstein urges that the Complaint adequately pleads detrimental reliance on the message because it caused him to "think[] termination occurred in the ordinary course of business . . . ." (Opp. Mem. at 10 (ECF 120).) He also states that the text message "disarmed" him and "led him to inaction." (Id. at 11.)

The message consists of compliments and superlatives but does not make any representations of fact about the administration of Regenokine or any aspect of Schottenstein's Regenokine license. It only vaguely alludes to the Caplas' future plans, stating that they had "decided to move forward on a different path." (Compl't ¶ 120.) It has no discernable bearing on Schottenstein's status as a Regenokine licensee. Statements that offer "no more than opinions and puffery" are not actionable as fraud. Jacobs v. Lewis, 261 A.D.2d 127, 127-28 (1st Dep't 1999); accord High Tides, LLC v. DeMichele, 88 A.D.3d 954, 958 (2d Dep't 2011) ("mere opinion and puffery . . . provide an insufficient basis upon which to predicate a claim of fraud."). Drawing every reasonable inference in favor of Schottenstein, the Court accepts the inference

that the author of the kind words of the text message intended to bestow insincere flattery upon Schottenstein so that he would refrain from forming an unfavorable opinion toward the Caplas. But the text message contained no factual representations about Schottenstein's license status or the Caplas' future business plans. Yolanda's unctuous text cannot be reasonably construed to contain a material misstatement or omission regarding any aspect of Schottenstein's Regenokine license or business operations.

The Complaint also fails to allege reasonable reliance. It does not describe how the over-the-top text message could have caused Schottenstein to take any action, or refrain from taking action, related to his Regenokine license from Orthogen. See, e.g., Dabriel, Inc. v. First Paradise Theaters Corp., 99 A.D.3d 517, 522 (1st Dep't 2012) (complaint did not allege reasonable reliance when statement was "too vague to have been justifiably relied on by plaintiffs.").

Because the Complaint does not identify a material misrepresentation or omission uttered by Edward or Yolanda Capla, and does not explain how Schottenstein could have reasonably relied on the text message in any matter related to the status of his Regenokine license, the fraud claim will be dismissed.

II.     The Motion to Dismiss the Conversion Claim Will Be Denied.

The conversion claim asserts that Schottenstein possessed ownership rights to his Regenokine practice, including patient lists, over which he exercised possession and control. (Compl't ¶ 210.) Plaintiffs assert that the Caplas have exercised unauthorized dominion over their "patient lists," "records pertaining to the patients" and "Regenokine related financial records." (Compl't ¶¶ 210-15.) They allege that Yolanda Capla "secretly remove[d] key

documents, statements and various records" after she sent the flattering text message to Schottenstein. (Compl't ¶ 35.)

"The facts as alleged sufficiently support the key elements of a conversion claim, which are: (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Core Dev. Grp. LLC v. Spaho, 199 A.D.3d 447, 448 (1st Dep't 2021). Both electronic and paper documents may be the subject of a conversion claim. See, e.g., Volodarsky v. Moonlight Ambulette Serv., Inc., 122 A.D.3d 619, 620 (2d Dep't 2014).

To the extent that the conversion claim is directed to the purported conversion of patient and financial records, the Complaint alleges facts sufficient to plausibly state a claim against the Caplas as to those categories of items. Elsewhere, however, the Complaint references a broader conversion of "the Regenokine Practice" that occurred when the Caplas entered into their new arrangement with Wasserman without giving compensation to plaintiffs. (Compl't ¶¶ 17, 48(v), 53, 106, 111.) The Complaint does not plausibly allege or explain how a conversion occurred as to a broader "Regenokine Practice" and what that term encompasses. There is no assertion, for example, that the Caplas absconded with medical equipment, funds owned by NY Spine, or assumed control of NY Spine's office space. The Complaint does not allege a claim of conversion of the "Regenokine Practice," but only the patient and financial records that the Caplas are alleged to have wrongfully removed and retained.

The Complaint plausibly alleges a conversion claim against the Caplas as to plaintiffs' patient records and financial records, and the motion to dismiss the claim will be denied.

### III. The Motion to Dismiss the Civil Conspiracy Claim Will Be Denied.

The Complaint asserts that the Caplas engaged in a civil conspiracy with Orthogen to commit "fraud and conversion" in order to deprive plaintiffs of money, business relations and opportunities. (Compl't ¶¶ 202-08.) While the Caplas are named in the underlying conversion claim, Orthogen is not. The Complaint alleges as an overt act that Orthogen "turned over" NY Spine's patient identities and records to the Caplas. (Compl't ¶ 46(iv).) It points to Yolanda Capla allegedly "tak[ing] key documents and records" from the NY Spine offices. (Compl't ¶ 48(iv); see also Compl't ¶ 50(ii) (referencing the Caplas' "theft of various records").) The Caplas urge that the claim should be dismissed on the sole grounds that the Complaint does not plausibly allege an underlying tort.

"To establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: an agreement between two or more parties; an overt act in furtherance of the agreement; the parties' intentional participation in the furtherance of a plan or purpose; and resulting damage or injury." Cohen Bros. Realty Corp. v. Mapes, 181 A.D.3d 401, 404 (1st Dep't 2020). "[T]he complaint must allege some factual basis for a finding of a conscious agreement among the defendants." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990). A claim of civil conspiracy does not need to satisfy the particularity requirement of Rule 9(b). Id.

The Court concludes at the pleading stage that the Complaint plausibly alleges a civil conspiracy claim as to the conversion of NY Spine's patient and financial records. It alleges that in addition to the Caplas' retrieval of patient and financial records from the NY Spine office, Orthogen provided the same information to the Caplas. It is conceivable that Orthogen had a contractual right to do so in its role as a licensor, but no such argument has been

raised. If the Complaint's allegations are accepted as true, they contain facts sufficient to allege that Orthogen and the Caplas agreed that the Caplas would unlawfully obtain dominion over or interference with NY Spine's patient and financial records. See Cohen Bros., 181 A.D.3d at 404.

To the extent that the Complaint also asserts a civil conspiracy claim directed to any act of fraud by the Caplas, the motion to dismiss will be granted because the Complaint does not allege an underlying tort of fraud. See id.

The motion to dismiss the civil conspiracy claim directed toward an unlawful agreement between Orthogen and the Caplas with the object of converting patient and financial records will be denied but otherwise granted.

    IV.    The Claim of Unjust Enrichment or Quantum Meruit Will Be Dismissed.

The Complaint asserts a claim headed "Unjust Enrichment/Quantum Meruit" against the Caplas. It asserts that Schottenstein placed the Caplas "in a position of trust" and performed services for them in good faith. (Compl't ¶¶ 241-43.) It states that Schottenstein "increased the value of . . . the Capla Defendants" through his Regenokine practice and that the Caplas "took advantage of their position of trust to usurp money, business, patients/clients and financial opportunities . . . ." (Compl't ¶ 244.) It states that "Plaintiffs expected to obtain compensation and value for the services rendered" and to retain clients, financial gain and profits, but have been "denied reasonable value" for their efforts. (Compl't ¶¶ 245-46, 248.)

"The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. A plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (quotation

marks, ellipsis and internal citations omitted).  "The elements of a cause of action sounding in quantum meruit are (1) performance of services in good faith, (2) acceptance of services by the person to whom they are rendered, (3) expectation of compensation therefor, and (4) reasonable value of the services rendered."  Evans-Freke v. Showcase Contracting Corp., 85 A.D.3d 961, 962 (2d Dep't 2011).  "Applying New York law, [courts] may analyze quantum meruit and unjust enrichment together as a single quasi contract claim."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005)

        The Complaint does not plausibly allege what services were rendered to the Caplas that form the basis for this quasi-contract claim.  It is not clear what is meant by the allegation that Schottenstein "increased the value" of the Capla defendants and what compensation he claims to be owed as a result.  The Complaint does not describe a refusal to pay by the Caplas for any type of performance by plaintiffs.  The conclusory allegation that the Caplas "took advantage of their position" to usurp plaintiffs' business does not describe a claim sounding in quasi-contract.  An earlier allegation in the Complaint suggests that the quasi-contract claim is merely a reformulation of the conversion claim.  (Compl't ¶ 106 ("By taking the Regenokine Practice through conversion and failing to compensate Plaintiffs for their interest therein, the Capla Defendants have been unjustly enriched.").)

        Because the Complaint does not plausibly allege a claim sounding in quasi-contract, the claim for unjust enrichment or quantum meruit will be dismissed.  The separate claim for an accounting or constructive trust as an equitably remedy for this claim will also be dismissed.

V.   The Complaint Does Not Include a Breach of
Contract Claim Asserted Against the Caplas.

Plaintiffs' opposition memorandum references a supposed breach of contract claim asserted against the Caplas, noting that the Caplas did not move to dismiss such a claim. (Opp. Mem. 19, 20.) The Capla defendants reply that the Complaint brought a breach of contract claim solely against Orthogen and that plaintiffs' assertion to the contrary "makes no sense." (Reply at 6-7.)

The 279-paragraph complaint occasionally references a variety of claims that are not expressly alleged as causes of action. For instance, it asserts that plaintiffs seek damages against Yolanda Capla for breach of fiduciary duty, breach of contract and breach of the implied covenant of good faith and fair dealing (Compl't ¶ 11), even though no such claims against her are listed among the causes of action. Paragraphs 101 to 103 appear under the heading "Breach of Contract." They assert that the Caplas breached what is called "the Schottenstein-Capla agreement" when "Capla . . . misus[ed] his responsibility to communicate with Orthogen on administration matters and royalty payments" and "conspir[ed] to wrongfully terminate" Schottenstein's Regenokine license without compensation. (Compl't ¶¶ 101-02.) The next paragraph asserts that Orthogen breached the 2014 licensing agreement by wrongfully terminating it. (Compl't ¶ 103.) After additional allegations purporting to describe plaintiffs' entitlement to relief on quasi-contract grounds, the Complaint continues with another 56 paragraphs of factual allegations. (Compl't ¶¶ 104-67.) The Complaint then lists individual causes of action under the heading "The Causes of Action." These include a breach of contract claim asserted against Orthogen but not one asserted against Edward and Yolanda Capla. (Compl't ¶¶ 232-38.)

The Third Amended Complaint does not allege a breach of contract claim against Edward and Yolanda Capla consistent with the notice pleading required by Rule 8(a), Fed. R. Civ. P. The "Breach of Contract" heading before paragraph 101 is preceded and followed by lengthy and detailed factual allegations. No such claim is included with the expressly alleged causes of action set forth later in the Complaint. As noted, the Complaint is replete with stray and conclusory references to grounds for liability that are not listed among the causes of action. The Complaint does not specify which provision or provisions of "the Schottenstein-Capla agreement" were breached. That agreement, in turns, appears to merely be a different label applied to the 2014 license agreement with Orthogen. (See Compl't ¶ 38.) The Complaint does not provide the Capla defendants with adequate notice that a breach of contract claim is being asserted against them, and, if it had, fails to provide them with adequate notice of the basis for any such claim.

CONCLUSION.

The motion to dismiss is GRANTED as to plaintiffs' claims asserting fraud, unjust enrichment/quantum meruit and an accounting and constructive trust. It is DENIED as to plaintiffs' claims of conversion and civil conspiracy to convert NY Spine's patient and financial records but is otherwise GRANTED. The Clerk is respectfully directed to terminate the motion. (ECF 113.) The Clerk is also directed to terminate the motion at ECF 115, as plaintiffs' claims against those defendants have been voluntarily dismissed. (See ECF 128.)

SO ORDERED.

*/s/ P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 9, 2024