Edward C. Wipper
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial:  646.593.7051
Fax:  646.798.8902
ewipper@beneschlaw.com

August 14, 2025

**VIA ECF**
Hon. P. Kevin Castel
United States District Court
Southern District of New York
Daniel Patrick Moynihan, United States Court House
500 Pearl Street, Room 11D
New York, New York 10007

  Re: ***Schottenstein, et al. v. Capla, et al.*, 1:22-cv-10883-PKC**

  **Non-party Dr. Bradley Wasserman's Opposition to Plaintiff's Letter Motion Requesting Pre-Motion Discovery Conference to Compel Compliance with a Subpoena**

Dear Judge Castel:

  This law firm represents third-party Dr. Bradley Wasserman ("Dr. Wasserman") in the above referenced action related to a subpoena duces tecum directed to Wasserman and issued by Plaintiffs seeking various categories of communications and documents.  Pursuant to the Court's Individual Rule 3(B) and Southern District of New York Local Rule 37.2, Wasserman, by this letter response, respectfully requests the Court deny Plaintiffs' request for a pre-motion discovery conference.[1]

  As discuss *infra*, Plaintiffs requests are nothing more than an end run around the Court's decision and order on the Motion to Dismiss, which specifically limit the scope of his claims of the alleged "conversion" of Plaintiffs' financial and medical records and a conspiracy between Defendant and Orthogen to convert same.  But rather than seek even one document related to the conversion and conspiracy claims that remain in this lawsuit after the Motion to Dismiss, Plaintiffs are misusing third-party discovery as a fishing expedition for Dr. Wasserman's licenses and communications with Defendants and the licensor for Regenokine.  Completely irrelevant to any claim for conversion of financial or medical records, this discovery is solely for the purpose of collecting information from Dr. Wasserman for his failed and already-dismissed claim for a purported conversion of Plaintiff's "Regenokine practice," which the Court already dismissed.

  The Court need not look further than Plaintiffs' own conduct for evidence that this is a fishing expedition targeting Dr. Wasserman and not any of the discovery for the claims that actually remain in the case.  Aside from apparently having failed to produce a single document to

---

[1] Incorporated by reference are the arguments made in Caplas' opposition to Plaintiffs' Letter Motion.

Defendants, Plaintiffs have had outstanding document requests to Defendants for these same license agreements and communications for months. Despite the fact that Capla has objected and not produced these documents or any documents other than the 210 pages of documents that he has produced, Plaintiffs have not lifted a finger to seek to compel additional documents either through deficiency letters or motion practice.

**I.     The Sole Remaining Counts in the Lawsuit to Survive a Motion To Dismiss are Counts for Conversion of Medical and Financial Files and For Conspiracy with Orthogen for Conversion of Medical and Financial Files**

Plaintiffs' original 2022 Complaint was a blunderbuss purporting to name numerous defendants and alleging numerous conspiracy theories. One was a purported conspiracy by the US Government to poison Schottenstein. Another of Plaintiffs' unsubstantiated conspiracy theories was their allegations of a purported conversion of Plaintiffs' "Regenokine Practice" by Defendant and Dr. Wasserman, who was briefly in business with Defendant Edward Capla for a brief period between 2020 and 2022. But Plaintiffs' theory that Capla and Wasserman converted his "Regenokine Practice" was short-lived. Plaintiffs voluntarily dismissed Dr. Wasserman as a Defendant years ago. Then, the claim by Plaintiffs against Defendants that Defendants converted Plaintiffs' "Regenokine Practice" did not survive a motion to dismiss.

To the contrary, after three years, three complaints and a motion to dismiss, the only operative causes of action are two counts for conversion and civil conspiracy by Edward and Yolanda Capla to convert NY Spine's patient and financial records. (*See* ECF 130.) And critically, in dismissing most of Plaintiffs' claims the Court foreclosed on any attempt by Plaintiff to attempt to use the remaining claims to seek discovery related conversion of the "Regenokine Practice." The Court found:

> To the extent that the conversion claim is directed to the purported conversion of patient and financial records, the Complaint alleges facts sufficient to plausibly state a claim against the Caplas as to those categories of items. Elsewhere, however, the Complaint references a broader conversion of "the Regenokine Practice" that occurred when the Caplas entered into their new arrangement with Wasserman without giving compensation to plaintiffs. (Compl't ¶¶ 17, 48(v), 53, 106, 111.) The Complaint does not plausibly allege or explain how a conversion occurred as to a broader "Regenokine Practice" and what that term encompasses. There is no assertion, for example, that the Caplas absconded with medical equipment, funds owned by NY Spine, or assumed control of NY Spine's office space. The Complaint does not allege a claim of conversion of the "Regenokine Practice," but only the patient and financial records that the Caplas are alleged to have wrongfully removed and retained.

(ECF 130, at pg. 9.)

**II.     Subpoena to Wasserman and Objections**

On March 26, 2025, Plaintiffs' counsel issued a subpoena to Wasserman in which he propounded requests for documents responsive to 19 different categories. Plaintiffs' counsel failed to personally serve Wasserman with the subpoena, instead leaving it with his office receptionist. But rather than wait for Plaintiff to move to compel, I affirmatively reached out Plaintiffs' counsel in good faith for a meet and confer. Almost three weeks after my initial outreach, Plaintiffs' counsel finally responded and we discussed several issues with the subpoena, including that it was overboard and not targeted at information relevant to the remaining conversion and conspiracy claims.

Although I had reserved objections because I did not believe Plaintiffs was entitled to any of the documents he wanted, Plaintiffs' counsel wanted to narrow the scope of the subpoena to what he "really wanted." After my request for the narrowed requests to be reduced to writing, Plaintiff sent a letter on June 18, 2025, which purportedly narrowed the scope of several of the subpoena requests. Despite my agreement to accept service of a subpoena, the letter did not include an updated date for compliance, nor did the letter indicate that Caplas' counsel was provided with a copy of the narrowed subpoena request so they could properly object if they believed they had a basis for their objections.

After months of attempting to get in touch with Caplas' prior counsel to understand whether Caplas' lawyer had a position on the subpoena, he finally returned my call. I learned from Caplas' counsel he had previously objected to the discovery of this information based on relevance grounds and refused to produce any documents Caplas' had in their possession. That discovery dispute has not yet been resolved, and in fact, Plaintiffs have not even sought to compel the production of such discovery from Caplas, the actual party in the litigation.

Plaintiffs' narrowed subpoena requests did not fix the issues raised in prior meet-and-confers. Instead, Plaintiffs' subpoena requests still seek information that has no relation to the remaining claims at issue and impose an undue burden on Wasserman, a non-party to the litigation. In light of these glaring issues, Wasserman served written objections to the revised requests contained in the letter on July 11, 2025.

**III.     Legal Standard**

Discovery requests must be "relevant to a[] party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). But the broad standard of relevance, it is not a license for unrestricted discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139–40 (S.D.N.Y. 2011). District courts may limit such discovery if they determine discovery is unreasonably cumulative or duplicative, if the party seeking discovery already has ample opportunity to obtain the information sought, if the discovery is proportional to the case, or if the burden or expense of the discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1-2). The burden of demonstrating relevance is on the party seeking discovery. *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y.2010); *Mandell v. Maxon Co.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

Hon. P. Kevin Castel
August 14, 2025
Page 4

Non-party discovery is governed by Rule 45 of the Federal Rules of Civil Procedure. When discovery is sought from third parties, the Court must also weigh the probative value of the information against the burden of production on the non-party. *See generally Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996); *see also* Fed. R. Civ. P. 45(d)(1) & (d)(2)(B)(ii) (stating that non-party status entitles parties to consideration regarding expense). Whether a discovery request imposes an "undue burden" depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the request, the particularity with which the documents are described, and the burden imposed. *See Concord Boat Corp.*, 169 F.R.D. at 49. Therefore, "to the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matters it runs the greater risk of being found overbroad and unreasonable." *Id.* at 50 (quoting *U.S. v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979).

Surprisingly, Plaintiffs' subpoena requests do not seek any document or communications related to NY Spine's patient and financial records. Instead, Plaintiffs' subpoena requests are plainly a fishing expedition designed to gain access to Wasserman's private business records on how he runs and operates his own practice, which is plainly an attempt to use this Court and the subpoena power for an improper purpose.

**IV.    The Narrowed Requests in the June 18, 2025 Letter Are Not Relevant to the Conversion to Conspiracy Claims and Seek Only to Resurrect the Dismissed Claim for Conversion of the Regenokine Practice**

The June 18, 2025 Letter purports to narrow the Subpoena and seeks the following documents and communications:

1. Wasserman's license agreement entered into with Orthogen;

2. All communications by, between, or among Dr. Wasserman and Orthogen or its agents concerning the negotiation and execution of the Wasserman-Regenokine License Agreement;

3. All communications by, between, or among Dr. Wasserman and Orthogen concerning the negotiation and execution of any modifications, amendments, addenda, side or collateral agreements, and the like concerning or relating to the Wasserman-Regenokine License Agreement;

4. A copy of any audit or audit report created by or prepared for Orthogen with respect to Dr. Wasserman's performance under the Wasserman-Regenokine License Agreement; and

5. Documents concerning or relating to, and communications by, between, or among Dr. Wasserman and any of (a) Orthogen, (b) Edward Capla, (c) Yolanda Capla, or (d) any other relevant third-party (e.g. Dr. Wasserman's office manager or any silent business partner), concerning or relating to, the following:

    a. The marketing of the Regenokine program by or on behalf of Dr. Wasserman and the development of a patient base for the sale of Regenokine by him;

    b. Documents sufficient to show all royalty payments on a monthly basis made by Dr. Wasserman to Orthogen from the commencement of the Wasserman License Agreement through March 31, 2025;

    c. Documents sufficient to show monthly revenue earned by Dr. Wasserman in connection with his sale of Regenokine treatments from the commencement of the Wasserman License Agreement through March 31, 2025;

    d. All documents evidencing any payments to the Defendants by Dr. Wasserman, whether directly or indirectly, on account of or in connection with Dr. Wasserman's sale of Regenokine treatments from the commencement of the Wasserman-Regenokine License Agreement through March 31, 2025; and

    e. All documents and communications concerning or relating to the Plaintiffs— from the time of the first material communication between Wasserman and Orthogen concerning the Wasserman-Regenokine License Agreement through the present — and specifically, but without limiting the foregoing, and Orthogen concerning the Wasserman-Regenokine License Agreement through the present — and specifically, but without limiting the foregoing, all documents and communications concerning (i) the performances by the parties to the 2014 Regenokine License Agreement, (ii) the termination, renewal, or amendment of the 2014 License Agreement, (iii) royalty payments and revenues under the 2014 Regenokine License Agreement, (iv) the marketing and promotion of Regenokine treatments under the 2014 Regenokine License Agreement; and (v) any professional athletes who were receiving or had received Regenokine treatments from the Plaintiffs and who began seeing Dr. Wasserman for the administration of Regenokine treatments in connection with the commencement of the Wasserman-Regenokine License Agreement.

       What is abundantly clear from these purportedly narrowed requests is that none of these requests seek any document or communication related to NY Spine's patient and financial records, let alone any facts related to any conversion or civil conspiracy to convert NY Spine's patient and financial records. For this reason alone, they do not satisfy even the most liberal and broad standards for discovery. On their face, each of the requests seek detailed information into Wasserman's practice and the Wasserman-Regenokine License Agreement, both of which have nothing to do with Plaintiffs' claims concerning the financial records or the patient records that Defendants are alleged to have stolen.

       Plaintiffs' letter to the Court fails to even make any attempt to form an argument as to why the requested material is relevant. Instead, Plaintiffs simply state that Wasserman administers Regenokine, Wasserman's "Regenokine Program" webpage links directly to a website maintained by Orthogen, and Wasserman is Defendant Edward Capla's brother-in-law. *See* Plaintiffs' Letter Motion at 9-10. Although Plaintiffs argue that this makes the documents requested relevant

because "[e]vidence concerning the converted information's past and current use is probative of Defendants' liability" and "the value of the converted information is informed, at least in part, by the revenue in fact generated after its conversion and the royalty payments Orthogen received after it purported to terminate the 2014 License Agreement with Plaintiffs," Plaintiffs failed to allege how the requested information related to Wasserman's own practice sheds light on NY Spine's allegedly converted patient and financial records.

Aside from failing to proffer any facts or arguments about how information about Dr. Wasserman's practice shed light on any relevant inquiry, Plaintiffs ignore black letter law regarding damages for conversion. "The usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest ... Profits lost are generally disallowed ..., [al]though they may be recoverable if they may reasonably be expected to follow from the conversion." *Fantis Foods v. Standard Importing Co.,* 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 402 N.E.2d 122; *see Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.,* 52 A.D.3d 674, 676, 861 N.Y.S.2d 705. But any damages from the loss of future profits must "be capable of measurement based upon known reliable factors without undue speculation" (*Ashland Mgt. v. Janien,* 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007), i.e., they must be "established with reasonable certainty." *Id.* at 405, 604 N.Y.S.2d 912, 624 N.E.2d 1007.

Here, Plaintiffs do not even attempt to demonstrate how they would have continued to earn profits from the allegedly converted patient and financial records in spite of the fact that their license with Orthogen was terminated in 2020. Thus, even if the Subpoena requests were somehow related to the converted patient and financial records, which we have shown they are clearly not, Plaintiffs have failed to connect how records related to Wasserman's business success and revenue earned from 2020 through 2025 are relevant in any way to Plaintiffs' damages for an alleged conversion.

Plaintiffs fail to explain how requesting detailed information into Wasserman's medical practice and the Wasserman-Regenokine License Agreement have any relevance to the allegedly converted patient and financial record. *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017) ("[T]o the extent a subpoena sweepingly pursues material with little or apparent [sic] or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." (first alteration in original) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996))); *See also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("Whether a subpoena imposes an "undue burden" depends on the relevance of the documents, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.")

V. Conclusion

Plaintiffs are using this case to go on a fishing expedition to collect non-relevant private non-party business records and communications that have nothing to do with Plaintiffs' simple claims for conversion and civil conspiracy to convert NY Spine's patient and financial records. By doing so, Plaintiffs are imposing an undue burden on non-party Wasserman. Therefore,

Hon. P. Kevin Castel
August 14, 2025
Page 7

Wasserman respectfully requests the Court deny Plaintiffs' request for a pre-motion discovery conference and deny Plaintiffs' attempt to compel Wasserman to produce documents that are not relevant to the litigation.

        Respectfully,

        BENESCH, FRIEDLANDER,
          COPLAN & ARONOFF LLP

        */s/ Edward C. Wipper*

        Edward C. Wipper

ECW:jwb